IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

GLEN TORRES, M12747,

    Plaintiff,

v.

OFFICER BARKLEY,
OFFICER FRYE,
NURSE CRANE, and
JANE DOE,

    Defendants.

Case No. 3:24-cv-01456-SPM

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This case is before the Court on Plaintiff Glen Torres's Complaint (Doc. 1). Torres is an inmate of the Illinois Department of Corrections (IDOC) currently housed at Menard Correctional Center. His lawsuit concerns injuries he sustained during a transport to court, and the lack of follow-up medical treatment. Plaintiff's Complaint is now subject to initial review. Under 28 U.S.C. § 1915A, the Court must screen all prisoner complaints to filter out nonmeritorious claims and must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant. 28 U.S.C. § 1915A(a), (b). The factual allegations of the *pro se* complaint are liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### BACKGROUND

On November 15, 2023, Plaintiff was involved in a car accident when Defendants Barkley and Frye struck a deer while transporting him to court. The accident caused him to be thrown against the plexiglass divider in the vehicle, smacking his face and knee. (Doc. 1 at p. 8). Plaintiff alleges that he immediately felt tremendous pain in his pelvic area and was concerned because he

previously had hernia repair surgery. He notified Barkley and Frye that he needed immediate medical attention, but Barkley told him that he could not be taken to the emergency room and had to see the medical providers at the prison. Plaintiff began to cry and complain about his pain. Without warning, Frye sprayed him with "OC spray" because he would not stop yelling or crying out in pain. (Doc. 1 at p. 9).

Plaintiff characterizes Frye's use of "OC spray" as excessive force or cruel and unusual punishment. (Doc. 1 at p. 10). He faults Barkley for failing to intervene in Frye's use of force.

Upon return to the prison, Barkley and Frye forced Plaintiff to walk to the medical unit. He found it difficult with his pain and leg shackles, so he ultimately was dragged. At the medical unit, Frye pulled Jane Doe nurse into a side room and spoke with her for about five minutes. Upon return, Jane Doe gave Plaintiff two ibuprofen and Tylenol and released him from the medical unit to his cell without any further assessment of his injuries.

Plaintiff alleges that since the date of his injury, he has submitted numerous emergency grievances and sick call slips asking for medical care, to no avail. He continues to have knee and neck pain. (Doc. 1 at p. 10). He faults Defendant Crane for being the "nurse practitioner" who has failed to give him access to adequate medical care, and for knowingly and willingly participating in denying his requests for care despite knowing he had injuries. (Doc. 1 at pp. 10-11). He also faults Defendants Barkley and Frye for knowingly and intentionally denying him medical attention. (Doc. 1 at p. 10). Plaintiff seeks monetary damages. (Doc. 1 at p. 12).

### MERITS REVIEW UNDER 28 U.S.C. § 1915A

Based on the allegations in the Complaint, the Court designates the following claims:

**Count 1:**   Eighth Amendment excessive force claim against Frye for deploying OC spray when Plaintiff complained about his injuries from the vehicle striking a deer.

**Count 2:**   Eighth Amendment failure to intervene claim against Barkley for

|  |  |
|---|---|
|  | failing to intervene in Frye's use of OC spray. |
| **Count 3:** | Eighth Amendment deliberate indifference claim against Frye and Barkley for denying Plaintiff access to medical care for his injuries that resulted from the collision. |
| **Count 4:** | Eighth Amendment deliberate indifference claim against Defendants Jane Doe and Crane for their role in denying Plaintiff medical care. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

## Count 1

An Eighth Amendment excessive force claim requires an inquiry into "whether force was applied in a good-faith effort to maintain or restore discipline, or [whether it was] applied maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The "core judicial inquiry" for an excessive force claim not the severity of the injury, but whether the force used was 'malicious and sadistic.' *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

Plaintiff alleges that without warning Frye sprayed him with OC spray to stop him from crying and complaining about the injuries he sustained when the vehicle collided with a deer. There is no suggestion that the OC spray was needed to regain control of Plaintiff, so on the facts alleged, Plaintiff's claim against Frye is sufficient to proceed.

## Count 2

Plaintiff faults Barkley for failing to intervene in Frye's use of OC spray, but he also admits that it was done without warning. A key component of a failure to intervene claim is an

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

individual's opportunity to act. Prison officials must intervene to prevent constitutional violations that they know about and have a realistic opportunity to prevent. *Gill v. Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017). Plaintiff has not plausibly suggested Barkley had a realistic opportunity to prevent Frye's actions, so Count 2 is dismissed as insufficient to state a claim.

**Count 3**

Prison officials and medical staff violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts and allegations suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant was aware of the serious condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). Generally, non-medical prison officials may defer to medical providers, unless they know or have reason to know that an inmate has a serious injury that is not receiving appropriate treatment. *Id.* at 527 (a non-medical official can be liable under the Eighth Amendment if they have actual knowledge or reason to believe prison doctors or assistants are mistreating or failing to treat an inmate with a serious need).

Plaintiff alleges that he repeatedly voiced his concerns to Barkley and Frye that he had been injured when the vehicle collided with a deer, but they refused immediate assistance in the form of transporting him to an emergency room. Upon return to the prison, they attempted to force him to walk to the medical unit, but he was in so much pain that he had to be dragged. He alleges that when they got to the medical unit, Frye spoke to the nurse for at least five minutes before she saw him, and when Jane Doe nurse did see him she did not assess him for injuries and instead just offered basic pain medication.

Inmates are not entitled to demand specific care, so the officers' refusal to immediately

4

proceed to the emergency room does not automatically imply deliberate indifference. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). If Plaintiff had a visibly obvious injury, or the officers had any reason to believe he had a severe and immediate injury, perhaps a claim could be made that they were deliberately indifferent to his situation, but the facts alleged do not support such an inference. Additionally, once the officers arrived back at the prison they brought Plaintiff to the medical unit. At that point, the officers could defer to medical providers. *See e.g., Hayes*, 546 F.3d at 527. He seems to suggest that at the medical unit, Frye somehow influenced the care he was offered. These assertions could perhaps support a claim against Frye, but not Barkley. Thus, Count 3 may proceed against Frye, but it is dismissed against Barkley.

## Count 4

Plaintiff faults Jane Doe for offering ibuprofen and Tylenol without assessing any of his injuries. He does not say anything about what he told Jane Doe, what she might have observed about him, or what she said to him. However, he suggests that because Jane Doe spoke to Frye at length before essentially dismissing him with basic pain medication, she did not genuinely assess his condition. This might be enough to sustain a deliberate indifference claim. Thus, Plaintiff will be allowed to proceed against Jane Doe.

As for Defendant Crane, Plaintiff faults her for denying him adequate medical care or for participating in the denial of care despite knowing he had injuries. Allegations of this nature could give rise to a deliberate indifference claim, but Plaintiff has not explained how he interacted with Crane or how she knew about his injuries. He also has not explained why it is that he believes she participated in denying care. The threadbare assertion that she denied or participated in the denial of care is insufficient as pled. Thus, Count 4 is dismissed for failure to state a claim against Crane.

## DISPOSITION

The Complaint states colorable claims in **Count 1** against Frye; in **Count 3** against Frye;

and in **Count 4** against Jane Doe. By contrast, **Count 2** against Barkley, **Count 3** against Barkley, and **Count 4** against Crane are all insufficient as pled. The Clerk of Court is **DIRECTED** to **TERMINATE** Defendants Barkley and Crane because Plaintiff has not pled any sufficient claims against these parties.

The Clerk of Court is **DIRECTED** to **ADD** the Warden of Menard to the docket sheet in official capacity only to help identify Jane Doe. The Warden need not file an answer. A schedule will be set for the exchange of information about Jane Doe. First, **Plaintiff must file a Notice within 30 days** describing Jane Doe's physical appearance, the date and time when he saw her, and any other information he may have about her identity, such as nicknames, etc.. The Warden will receive next steps once the notice is filed and counsel has appeared for the Warden.

The Clerk shall prepare for Defendant Frye and the Warden of Menard (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1) and this Memorandum and Order to these Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **REMINDED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

The Clerk of Court is also **DIRECTED** to enter the standard HIPAA protective order in this case.

**IT IS SO ORDERED.**

**DATED:  November 18, 2024**

*s/ Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**
