IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GLEN TORRES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:24-CV-1456-MAB |
| ) | |
| NICHOLAS FRY and KENDRA ) | |
| CROSS, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

**BEATTY, Magistrate Judge:**

This matter is before the Court on Defendant Nicholas Fry's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 42) and Defendant Kendra Cross's Motion for Summary Judgment for Plaintiff's Failure to Exhaust His Administrative Remedies (Doc. 44). For the reasons set forth below, Defendant Fry's motion is DENIED (Doc. 42), and Defendant Cross's motion is GRANTED (Doc. 44).

**BACKGROUND**

Plaintiff Glen Torres filed this civil rights action on June 6, 2024, pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights that occurred while he was incarcerated at Menard Correctional Center (*see* Doc. 1; *see also* Doc. 10). Plaintiff's Complaint alleges that he was involved in a car accident while Defendant Fry and another correctional officer were transporting him to Court on November 15, 2023 (Doc. 10 at p. 1). Although Plaintiff suffered injuries, Defendant Fry did not take him to immediately

obtain medical attention and instead sprayed him with "OC spray" because he would not stop yelling or crying out in pain (*Id.* at pp. 1-2).

Thereafter, Defendant Fry and another officer dragged Plaintiff to the medical unit at Menard (*Id.* at p. 2). Defendant Frye then pulled Defendant Cross, a nurse at Menard, aside and spoke with her for about five minutes (*Id.*; *see also* Doc. 28). When Defendant Cross returned to Plaintiff, she gave him two Tylenol and/or Ibuprofen and then released him from the medical unit without any further assessment of his injuries (Doc. 10 at p. 2).

The Court conducted a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A in November 2024 (Doc. 10). Ultimately, Plaintiff was permitted to proceed on the following claims:

> **Count 1:** Eighth Amendment excessive force claim against [Defendant Fry] for deploying OC spray when Plaintiff complained about his injuries from the vehicle striking a deer.
>
> **Count 3:** Eighth Amendment deliberate indifference claim against [Defendant Fry] for denying Plaintiff access to medical care for his injuries that resulted from the collision.
>
> **Count 4:** Eighth Amendment deliberate indifference claim against [Defendant Cross] for [her] role in denying Plaintiff medical care.

(*Id.* at p. 2-6).[1]

On September 15, 2025, Defendant Fry filed his Motion for Summary Judgment on the Issue of Exhaustion, along with several supporting exhibits (*see* Doc. 42 through Doc. 42-5). Defendant Cross also filed her Motion for Summary Judgment for Plaintiff's Failure

---

[1] The Court's Merit Review Order dismissed Count 2 and two other individuals whom Plaintiff had named as Defendants for the reasons stated therein (*see generally* Doc. 10). Additionally, Count 4 was originally permitted to proceed against Defendant Jane Doe (*Id.* at p. 5). However, Defendant Cross was subsequently identified and substituted for the Jane Doe Defendant (*see* Docs. 22, 26, 28).

to Exhaust His Administrative Remedies on September 15 (Docs. 44, 45, 45-1). Plaintiff did not respond to either motion.[2]

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF EXHAUSTION

### I.   *Summary Judgment Standards*

Summary judgment is appropriate if the movant shows there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). *See also Flournoy v. Schomig*, 152 Fed. Appx. 535, 539 (7th Cir. 2005) (explaining that the failure to exhaust is an affirmative defense that the defendants bear the burden of establishing). In making that determination, the Court "generally will construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). This means courts cannot resolve factual disputes in favor of the party seeking summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, "[t]he nonmoving party must do more than simply show that there is some

---

[2] Plaintiff's failure to respond to Defendants' motions is deemed an admission that Defendant's version of the facts is true. *See* SDIL-LR 56.1(g) ("All material facts set forth in a Statement of Material Facts . . . shall be deemed admitted for purposes of summary judgment unless specifically disputed."). Therefore, the facts asserted by Defendants are deemed admitted to the extent that they are supported by evidence in the record. *See* Fed. R. Civ. P. 56(e)(2); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (citations omitted). The admission of Defendants' material facts, however, does not automatically grant their motions for summary judgment; Defendants must still demonstrate that they are entitled to judgment as a matter of law. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012).

metaphysical doubt as to the material facts." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010).

## II.   *Exhaustion Requirements*

As outlined in the Prison Litigation Reform Act, "[a] prisoner may not bring a federal suit about prison conditions unless he first has exhausted all available administrative remedies." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011) (citing 42 U.S.C. § 1997e(a)). A remedy has not been exhausted if the prisoner failed to abide by the procedures for pursuing relief. *Id.* Thus, to properly exhaust one's administrative remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

However, an inmate is not required to exhaust administrative remedies that are not actually available to him. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) ("Remedies that are genuinely unavailable or nonexistent need not be exhausted."). The Seventh Circuit has "found remedies unavailable in a number of instances in which the inmate, through no fault of his own, could not have accessed the grievance procedure." *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018). Furthermore, the failure to exhaust administrative remedies is an affirmative defense that the defendants carry the burden of proving. *See Ramirez v. Young*, 906 F.3d 530, 533 (7th Cir. 2018). "To meet their burden, the defendants must show beyond dispute that remedies were available." *Id.* at 533-34.

### III.    IDOC Grievance Procedures

Individuals incarcerated within the Illinois Department of Corrections (IDOC) are required to follow the grievance procedure outlined in the Illinois Administrative Code to exhaust their administrative remedies. *See* 20 Ill. Admin. Code § 504.800, *et seq.* (2017). To initiate the normal grievance process, an inmate must file a grievance with their institutional counselor within 60 days of the discovery of the incident. *Id.* at § 504.810(a). After the counselor provides a response, an inmate may submit his grievance to a grievance officer who is to report his or her findings and recommendations to the Chief Administrative Officer (the "warden") within two months. *Id.* at 504.830(e). The warden reviews the grievance officer's findings and recommendations, and then provides a written decision. *Id.* If an inmate is unsatisfied with the warden's decision, he has 30 days from the date of the warden's decision to appeal to the Administrative Review Board (ARB). *Id.* at § 504.850(a). The ARB then submits a written report to the Director of the IDOC, who makes a final decision within six months, when reasonably feasible. *Id.* at § 504.850(e).

Alternatively, an inmate can request for his or her grievance to be handled on an emergency basis by submitting the grievance directly to the warden. *Id.* at § 504.840. If the warden determines the grievance should not be handled as an emergency, the inmate is notified in writing that he or she may resubmit the grievance in accordance with the standard grievance process. *Id.* at § 504.840(c). However, if the warden determines the grievance is an emergency, the warden must expedite processing of the grievance and respond by indicating what action shall be or has been taken. *Id.* at § 504.840(b).

Additionally, if an inmate appeals the warden's decision on an emergency grievance, the ARB is also required to expedite processing of the emergency grievance. *Id.* at § 504.850(f).

### IV.    Analysis of Defendant Fry's Motion (Doc. 42)

Defendant Fry argues that he is entitled to summary judgment based upon Plaintiff's failure to exhaust his administrative remedies because Plaintiff never fully exhausted any grievance raised against him (*see generally* Doc. 42). In support, Defendant Fry has attached Plaintiff's housing and movement records (Doc. 42-1), an affidavit from a grievance officer at Menard (Doc. 42-2), two grievance logs (Docs. 42-3, 42-4), and an affidavit from an ARB chairperson (Doc. 42-5).

As an initial matter, the Court questions whether Defendant Fry intended to file a partial motion for summary judgment or a full motion for summary judgment because his motion and the arguments contained therein focus almost entirely on Plaintiff's excessive force claim raised against him in Count 1 (*see generally* Doc. 42). For instance, Defendant Fry's motion states that "[a]s the Complaint pertains to Defendant Fry, Plaintiff alleges that … Defendant Fry sprayed Plaintiff with OC spray without warning." (*Id.* at p. 1). However, Defendant Fry's motion makes no mention of Plaintiff's claim in Count 3 against him related to his deliberate indifference in Plaintiff's medical treatment (*see* Doc. 10 at pp. 4-5). Furthermore, as will be discussed at greater length below, Defendant Fry's motion relies on record searches that focused upon grievances "related to Defendant Fry, injuries sustained in a vehicle collision, or being sprayed with OC spray on November 15, 2023." (*see, e.g.*, Doc. 42 at p. 2). Put another way, Defendant Fry's record custodians did not even look for records related to Defendant Fry's alleged role in

denying Plaintiff adequate medical care following the accident.

Ultimately, regardless of which counts Defendant Fry intended to move for summary judgment on, the Court finds that he has failed to meet his burden as to both Counts 1 and 3 by demonstrating that Plaintiff did not exhaust his administrative remedies. *See Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) ("Because exhaustion is an affirmative defense, it is the defendants' burden to show Pyles's failure to exhaust."). Crucially, this is not a situation where Defendant Fry has attempted to demonstrate through affidavits that Plaintiff filed no grievances at either the facility level or the ARB. Instead, as shown by the grievance logs provided by Defendant Fry, it is undisputed that Plaintiff filed numerous grievances between November 2023 and June 2024 (i.e., between the date of the incident and the date his Complaint was filed) (*see* Docs. 42-3, 42-4). However, rather than provide those grievances to the Court, Defendant Fry instead provided affidavits from a Menard Grievance Officer and an ARB Chairperson, both of which attest to the fact that those individuals looked through Plaintiff's grievance records and did not identify grievances ***specifically relating*** to Defendant Fry, injuries Plaintiff sustained in the collision, or being sprayed with OC spray (*see* Doc. 42 at p. 6; *see also* Docs. 42-2 at p. 5; 42-5 at p. 4).

The affidavits and logs submitted by Defendant Fry, without more, are simply not sufficient to satisfy Defendant Fry's burden. *See, e.g., Croom v. Hughes*, No. 23-CV-2885-NJR, 2025 WL 832213, at *4 (S.D. Ill. Mar. 17, 2025) ("In order to meet their burden, Defendants must offer evidence to demonstrate that Croom failed to exhaust his administrative remedies by offering grievance records, counseling summaries, and

affidavits explaining the grievance procedure at the prison."). Instead, they merely demonstrate that the Menard Grievance Officer and ARB Chairperson both personally thought that Plaintiff's grievances (at their respective levels/facilities) do not identify Defendant Fry, injuries Plaintiff sustained in the collision, or being sprayed with OC spray. To put it bluntly, when reviewing an exhaustion-based motion for summary judgment, it is the Court's role to determine what is identified in a grievance—not Defendant Fry's affiants. Again, if Defendant Fry's affiants were merely attesting to the fact that no such grievance records existed, this would be a different story; but that is most certainly not what they attested to here (*see* Docs. 42-2, 42-5). Instead, Defendant Fry's affiants specifically reviewed Plaintiff's grievances to determine if they thought those grievances identified certain, limited topics (*Id.*).[3] In this particular context, this approach falls far short of Defendant Fry's burden.

The impropriety of this approach is further demonstrated by the facility-level grievance log submitted by Defendant Fry which shows that Plaintiff filed a grievance on November 29, 2023 (i.e., just two weeks after the accident) challenging Plaintiff's "medical diet" and "staff conduct." (Doc. 42-3 at p. 2). Without providing that grievance to the Court, the Court has no way to determine whether that grievance covered Plaintiff's claims against Defendant Fry (*Id.*). Again, it is the Court's role – and not the role of prison

---

[3] Put another way, what Defendant Fry has essentially attempted to do here is have his own affiants, both of whom are prison officials, comb through Plaintiff's grievance records to make conclusions of law as to what those grievances do or do not identify. And then he did not even provide the Court with those grievance records to support his affiants' conclusions. He is asking the Court grant summary judgment in his favor, relying solely on the factual and legal conclusions of his prison official affiants. Simply put, that is woefully deficient.

officials submitting affidavits – to determine what is and is not identified in a grievance record for purposes of exhaustion of administrative remedies.[4]

For example, when looking at whether a grievance identifies a specific defendant, the Court is exceedingly familiar with caselaw discussing when alternate identifying information or context can be relied upon in lieu of directly naming a defendant. *Compare Saffold v. Illinois Dep't of Corr.*, No. 18 C 3301, 2021 WL 4477930, at *7 (N.D. Ill. Sept. 30, 2021) (finding the plaintiff provided sufficient information to identify the defendant even when the plaintiff never directly named the defendant because the prison could deduce who was involved based upon the grievance), *with Roberts*, 745 F.3d at 236 (finding a failure to exhaust where the grievance only mentioned complaints against a doctor, but the plaintiff was actually seeking to bring suit against a nurse). Obviously, the Court has no such assurances that Defendant Fry's affiants are equally familiar with that precedent or were otherwise correct in their personal conclusions that Plaintiff's grievances did not identify Officer Fry, injuries sustained in a vehicle collision, or being sprayed with OC spray.[5] *See Johnson v. Walter*, No. 3:24-CV-1806-MAB, 2026 WL 63433, at *5, fn. 5 (S.D. Ill.

---

[4] Nevertheless, prison officials may and do make such determinations in regard to whether a grievance was sufficiently specific to satisfy the IDOC's own grievance requirements. However, that internal determination is made in the context of reviewing a grievance and/or providing relief to an inmate. It is not made in regard to whether a party should be granted summary judgment in federal court due to an inmate's failure to exhaust his administrative remedies. This distinction is crucial.

[5] In fact, the ARB chairperson's affidavit in this case provides a clear example of why it is the Court, not a prison official, that must determine whether a grievance identified an issue for purposes of exhaustion. Specifically, ARB Chairperson Travis Bayler stated in his affidavit that, "Based on the records held by the ARB, Mr. Torres appealed no grievances to the ARB during this time period related allegations against Officer Fry, *injuries sustained in a vehicle collision*, or being sprayed with OC spray on November 15, 2023." (Doc. 42-5 at p. 4) (emphasis added). However, one of the ARB grievance records (which was submitted by Defendant Cross and not Defendant Fry) includes a grievance received by the ARB wherein Plaintiff stated, among other things, "I have lost 100 pounds and *I have constant blackouts since being in*

Jan. 8, 2026) ("Suffice it to say, Defendant's own, self-serving (and here, erroneous) representation as to what constitutes a relevant grievance is not appropriate evidence for the Court to rely upon when determining whether summary judgment should be granted. In the future, Defense Counsel should take great care to ensure its representations to the Court are accurate and to file all potentially relevant grievances alongside Defendant's motion in order to meet Defendant's burden of proof."). Thus, without being provided the underlying grievances, the Court finds that Defendant Fry has not met his summary judgment burden.

Furthermore, in contrast to Defendant Cross,[6] Defendant Fry did not provide Plaintiff's underlying grievances from either the facility level or the ARB. This is noteworthy because, barring an acceptable reason for not having completed the administrative remedy process, Plaintiff's failure to exhaust at either level would be fatal to his claims. Accordingly, given Plaintiff's failure to respond in opposition, Defendant Fry *could* have prevailed by submitting either Plaintiff's facility level grievance records

---

*an accident coming back from a Court writ!* My grievances continue to come up missing pertaining to this issue and I'm not being seen by health care or anybody." (Doc. 45-1 at p. 73) (emphasis added).

   Frankly, the Court struggles to square the affiant's statement that the ARB has no grievance appeal records related to a vehicle collision with Plaintiff's grievance received by the ARB in April 2024 that directly complains of medical issues following an accident coming back from court. This type of inaccuracy is precisely why Defendant Fry cannot satisfy his burden based solely on affidavits stating no grievances were received covering a limited set of topics – without also providing Plaintiff's underlying grievances.

   To avoid confusion, however, the Court emphasizes that the discussion in this footnote does not address whether Plaintiff actually followed appropriate procedures and exhausted his administrative remedies related to the grievance in question. That topic will be discussed at greater length in the portion of this Order addressing Defendant Cross's motion.

[6] Notably, Defendant Cross's motion does not suffer from this shortcoming because it provided all of Plaintiff's grievance records filed with the ARB and did not rely exclusively on the statements of prison officials who were tasked with only searching for limited types of grievance records. Additionally, it is worth emphasizing that Defendant Fry filed his motion shortly before Defendant Cross and at no point attempted to reference or join Defendant Cross's motion and the exhibits contained therein.

or his ARB level grievance records (assuming those grievances supported his exhaustion-based arguments). However, without providing the underlying grievances from either entity, Defendant Fry has not demonstrated that Plaintiff failed to properly exhaust his administrative remedies at any step in the process.

In conclusion, by failing to provide any of Plaintiff's grievance records underlying either the grievance officer's or the ARB chairperson's affidavits, the Court finds that Defendant Fry has not met his burden of establishing that Plaintiff failed to exhaust his administrative remedies as it relates to Plaintiff's claims against Defendant Fry. *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018) ("It was not Davis's burden to establish that the grievance process was unavailable; it was the officers' burden to show that Davis did not exhaust available remedies."). Accordingly, Defendant Fry's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies is DENIED (Doc. 42).[7]

### V.    *Analysis of Defendant Cross's Motion (Doc. 44)*

Defendant Cross argues she is entitled to summary judgment because none of Plaintiff's grievances filed at the ARB level directly identified her or Plaintiff's claim against her (*see generally* Docs. 44, 45). In support, Defendant Cross provided Plaintiff's

---

[7] The Seventh Circuit generally instructs district courts to conduct an evidentiary hearing and resolve contested issues of fact when considering a motion for summary judgment based upon a prisoner's alleged failure to exhaust his or her administrative remedies, *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). However, an evidentiary hearing is not necessary when there are no material factual disputes. *See Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009) (no hearing required where there are "no disputed facts regarding exhaustion, only a legal question"). Here, the Court does not believe a *Pavey* hearing is necessary because the facts are not in dispute. Rather there is simply a lack of evidence to support those facts. And more importantly, to allow Defendant Fry the opportunity to provide the underlying records which he declined to do the first time around would be to unfairly provide him with another bite at the apple.

ARB-level grievance records and argued as to why they did not exhaust Plaintiff's claim against her (*see* Doc. 45-1).

The Court finds Defendant Cross's arguments to be persuasive. First and foremost, Plaintiff was solely proceeding against Defendant Cross based upon his claim that she only provided him with two Tylenol and/or Ibuprofen and then released him from the medical unit without "genuinely assess[ing] his condition" following the car accident on November 15, 2023 (Doc. 10 at pp. 2 & 5). Thus, Plaintiff's claim against Defendant Cross is focused upon her alleged deliberate indifference to his injuries on that date (*Id.*). In other words, Plaintiff's claim against Defendant Cross does not generally allege that she was deliberately indifferent to his injuries or personally responsible for any denials of medical care after their interaction on November 15, 2023. Consequently, pursuant to § 504.810(a), Plaintiff needed to file a grievance identifying his claim against Defendant Cross within 60 days of that date.

However, the ARB's grievance records filed by Defendant Cross demonstrate that Plaintiff did not timely file and fully exhaust any grievance related to that specific claim. Notably, one grievance received by the ARB appears to challenge Plaintiff's overall medical care and mentions the November 2023 car accident (*see* Doc. 45-1 at pp. 72-73). However, even assuming that grievance identified Plaintiff's claim against Defendant Cross, it is clear that grievance was not filed within 60 days of November 15, 2023 (*see Id.*). Accordingly, the Court finds that grievance is facially untimely pursuant to § 504.810(a) and does not serve to exhaust Plaintiff's claim against Defendant Cross.

Furthermore, as Defendant Cross points out, that grievance was denied by the ARB because it did not attach a facility level response (*see Id.*) (stating the grievance "does not follow the DR504F" and "needs a facility response."). When the ARB appropriately denies a grievance for procedural reasons, that grievance cannot be relied upon to demonstrate that the plaintiff has exhausted his or her administrative remedies. *See, e.g.*, *McDonald v. Henze*, No. 20 C 643, 2022 WL 279587, at *4 (N.D. Ill. Jan. 31, 2022) ("[T]he ARB then returned McDonald's grievance for failure to provide all required documentation and indicated the steps McDonald needed to take for the ARB to consider his appeal. The return of his grievance and appeal on procedural grounds demonstrates that he never received a final determination on the merits of his grievance."); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) ("[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies."). Thus, for both its facial untimeliness and its failure to follow the IDOC's grievance procedure, the Court concludes that grievance does not exhaust Plaintiff's administrative remedies as to his claim against Defendant Cross.

Moreover, the ARB grievance records provided by Defendant Cross contain no other grievance that might have served to fully exhaust Plaintiff's administrative remedies as to his claim against Defendant Cross (*see generally* Doc. 45-1). Therefore, the Court finds that Plaintiff has failed to exhaust his administrative remedies as to Count 4. For this reason, Defendant Cross's Motion for Summary Judgment for Plaintiff's Failure to Exhaust His Administrative Remedies is GRANTED (Doc. 44). Count 4 is DISMISSED and resultingly, Defendant Cross is DISMISSED without prejudice.

CONCLUSION

For the reasons discussed above, Defendant Fry's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies is DENIED (Doc. 42) and Defendant Cross's Motion for Summary Judgment for Plaintiff's Failure to Exhaust His Administrative Remedies is GRANTED (Doc. 44). Count 4 is **DISMISSED** and resultingly, Defendant Cross is **DISMISSED without prejudice**. Judgment will be entered in favor of Defendant Cross at the conclusion of this case.

This action is now moving beyond the exhaustion of administrative remedies phase. Accordingly, the stay on merits-based discovery is **LIFTED** and the parties can proceed with discovery on the merits. A new scheduling order will be entered by separate order.

**IT IS SO ORDERED.**

**DATED: July 13, 2026**

**MARK A. BEATTY**
**United States Magistrate Judge**